**UNITED STATES DISTRICT COURT**
**DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | | |
|---|---|---|
| R&J Components Corporation, | ) | C/A No.: 2:23-cv-00358-MHC |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| Centimark Corporation & SIU Professional | ) | |
| Roofing LLC, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Plaintiff R&J Components ("Plaintiff") filed this action for negligence, alleging damage to inventory during roof renovations. ECF No. 1-3. This diversity action under 28 U.S.C. § 1332 is proceeding before the undersigned by consent of the parties pursuant to 28 U.S.C. § 636 and Local Civil Rule 73.01(B), (D.S.C.). *See* ECF Nos. 15; 16. Before the Court is a Motion by Centimark Corporation and SIU Professional Roofing LLC ("Defendants") seeking to exclude Plaintiff's damages expert, Mikey Minor ("Minor"), under Rule 702 of the Federal Rules of Evidence. ECF No. 60. Plaintiff responded in opposition, ECF No. 71, and Defendants replied, ECF No. 78. The Motion is ripe for review.

**LEGAL STANDARD**

Under Federal Rule of Evidence 702, the Court acts as a gatekeeper "to verify that expert testimony is based on sufficient facts or data."[1] *E.E.O.C. v. Freeman*, 778 F.3d 463, 472 (4th Cir. 2015). The expert testimony must be shown to be "not only relevant, but reliable." *Daubert v.*

---

[1] Under the *Erie* doctrine, federal courts apply state substantive law and federal procedural law when reviewing state-law claims. *Kerr v. Marshall Univ. Bd. of Governors*, 824 F.3d 62, 74 (4th Cir. 2016). The Federal Rules of Evidence, as validly enacted procedural rules, therefore govern in diversity cases such as this one. *See Scott v. Sears, Roebuck & Co.*, 789 F.2d 1052, 1054 (4th Cir. 1986).

*Merrell Dow Pharm. Inc.*, 509 U.S. 579, 589 (1993). "Because expert witnesses have the potential to be both powerful and quite misleading, it is crucial that the district court conduct a careful analysis into the reliability of the expert's proposed opinions." *United States v. Fultz*, 591 F. App'x 226, 227 (4th Cir. 2015).

The first step of this gatekeeping function involves a determination of whether the expert is qualified to offer an opinion. *See Fernandez v. Spar Tek Indus., Inc.*, No. C.A. 0:06-3253-CMC, 2008 WL 2185395, at * 1 (D.S.C. May 23, 2008). Then, in addition to ensuring the specialized knowledge will help the jury to understand the evidence or determine a fact in issue, the trial court must ensure that (1) "the testimony is the product of reliable principles and methods," (2) the "expert has reliably applied the principles and methods to the facts of the case," and (3) the "testimony is based on sufficient facts and data." Fed. R. Evid. 702. "This entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid," *Daubert*, 509 U.S. at 592–93, and whether the expert has faithfully applied the methodology to the facts. *Randall v. Allstate Ins. Co.*, No. 9:24-CV-4123-RMG, 2025 WL 2312469, at *1 (D.S.C. July 7, 2025). Additionally, the Court must evaluate any proposed expert testimony under the standards of Federal Rule of Evidence 403 to determine whether the probative value of the evidence, if relevant, is substantially outweighed by the risk of misleading or confusing the jury.

The proponent of the expert testimony carries the burden to establish the admissibility of the testimony by a preponderance of the evidence. *Cooper v. Smith & Nephew, Inc.*, 259 F.3d 194, 199 (4th Cir. 2001). When determining if an expert's qualifications are sufficient under *Daubert*, the Court should "'consider the proposed expert's full range of experience and training,' not just his professional qualifications." *Belk, Inc. v. Meyer Corp.*, 679 F.3d 146, 162 (4th Cir. 2012)

2

(quoting *United States v. Pansier*, 576 F.3d 726, 737 (7th Cir. 2009)). "Generally, the test for exclusion is a strict one, and the purported expert must have neither satisfactory knowledge, skill, experience, training nor education on the issue for which the opinion is proffered. One knowledgeable about a particular subject need not be precisely informed about all details of the issues raised in order to offer an opinion." *Thomas J. Kline, Inc. v. Lorillard, Inc.*, 878 F.2d 791, 799 (4th Cir. 1989) (citing *Martin v. Fleissner GmbH*, 741 F.2d 61, 64 (4th Cir. 1984)).

## **DISCUSSION**

Plaintiff designated Mikey Minor to testify as an expert witness on (1) the extent of the property damage and (2) the value of the loss. ECF No. 60-1 at 1–2.

Defendants argue that Minor lacks the specialized knowledge needed to assist the trier of fact regarding the fair market value of the inventory at issue. ECF No. 60 at 3. They further contend that his methodology is unreliable and lacks proper application to the facts of this case.[2] *Id.* at 4–14. Plaintiff argues that Defendants' Motion should be denied because Minor is qualified as an expert by his education and experience and because his methodology for assessing damages and value is reliable. ECF No. 71 at 1.

---

[2] In so doing, Defendants largely rely on South Carolina common law in support of their arguments. *See, e.g.*, ECF No. 60 at 4–5. As set forth above, *see supra* note 1, the Federal Rules of Evidence generally apply in resolving disputes such as these in diversity cases. Defendants have not presented any exception in which the Federal Rules of Evidence may "encroach upon a [s]tate's substantive law" that would call for the application of state law instead. *See Hottle v. Beech Aircraft Corp.*, 47 F.3d 106, 110 (4th Cir. 1995).

Moreover, though Defendants generally assert Minor's testimony lacks application to the facts of this case, they have not included any argument on this basis. Nor is it apparent that this is so. Minor's testimony relates specifically to the allegedly damaged inventory that is the subject of this litigation. As such, the Court finds his testimony is "sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute." *See Daubert*, 509 U.S. at 591. Nor does the Court find that the probative value of the evidence at issue in the instant Motion is substantially outweighed by the risk of misleading or confusing the jury under Rule 403 of the Federal Rules of Evidence.

## I.     Qualification: Specialized Knowledge

Defendants assert Minor "has no particular knowledge, training, skill, or experience that would assist the jury as to determining [the] value of the allegedly damaged inventory." ECF No. 60 at 4.

"Rule 702 makes inadmissible expert testimony as to a matter which obviously is within the common knowledge of jurors because such testimony, almost by definition, can be of no assistance." *Scott*, 789 F.2d at 1055. The Fourth Circuit applies the "common knowledge" rule, which finds expert testimony to be unnecessary when reaching the expert's opinion "is something that can sufficiently be done by the jury without help from an expert." *United States v. Dorsey*, 45 F.3d 809, 815 (4th Cir. 1995). "Courts have generally found experts to lack the requisite qualifications only when the proposed expert clearly has no relevant qualifications." *United Prop. & Cas. Ins. v. Couture*, 639 F. Supp. 3d 590, 598 (D.S.C. 2022) (citing *Thomas J. Kline, Inc.*, 878 F.2d at 799).

Though Defendants do not contest that Plaintiff's expert's opinions are relevant, they argue that his knowledge is not specialized beyond what a layperson could offer because he used internet searches and called outside sources to arrive at his valuation. *See* ECF Nos. 60 at 3–4; 78 at 2–4.

Plaintiff counters that Minor has over twenty years of experience in consulting and serves as a lead consulting engineer for TechLoss Consulting and Restoration, Inc., where he has evaluated losses involving electronics, electrical infrastructure, and electro-mechanical equipment since 2003. ECF Nos. 71 at 6; 60-2 at 1–2. As a result of his experience, Plaintiff argues, "Minor has specialized knowledge in industry sources to obtain pricing and evaluat[e] unique components to develop comparison pricing where exact 'apples to apples' components may not exist in the

4

market." ECF No. 71 at 6. Plaintiff cites to Minor's deposition testimony that highlights the "skill

and expertise utilized in arriving at the value of the subject products":

> If our research didn't identify a specific source for a component, then we would have come up with a price based on other factors. Oftentimes a component is very similar to another component, has the same footprint, very similar operation but slightly different tolerance or value, and, therefore, we would have looked at those factors and then looked at the proposed price and said, yes, we agree the proposed price is reasonable and can be used for our calculations.

ECF No. 60-4 (Minor Dep.) 78:9–19.

Plaintiff has demonstrated by a preponderance of the evidence that Minor's valuations and

consideration of factors including the identification of each component, its footprint, operation,

and more, is beyond the knowledge of a layperson. *See Cooper*, 259 F.3d at 199. As such, Minor

is qualified to testify to these matters.

## II.    Reliability

Similarly, Defendants argue that the methods used by Minor to provide a valuation of the

inventory at issue were unreliable. ECF No. 60 at 4–14. They offer a number of reasons in support

of their arguments:

1) Failure to Determine Extent of the Damage
2) Failure to Consider Prior Sales Data as Part of Calculation of Value
3) Failure to Analyze Costs of Acquisition
4) Failure to Analyze Potential Resale Value
5) Failure to Analyze Salvage Value
6) Failure to Analyze Whether Inventory Was Obsolete
7) Subjective Evaluations of the Level of Contamination
8) Failure to Determine Fair Market Value
9) Acceptance of Plaintiff's Allegations
10) Assignment of Value to Items Lacking Evidence of Contamination

*Id.*[3]

Here, Minor's expert testimony is based upon his experience. ECF Nos. 71 at 6; 60-2 at 1–

---

[3] The Court has grouped Defendants' "errors" by Minor into these ten categories.

2. Because Minor's methodology is not scientific in the traditional *Daubert* sense (i.e., not subject to peer-reviewed publication or laboratory testing), the Court evaluates it under the framework established in *Kumho Tire Co.*, which governs experience-based expert testimony. *Mincey v. Se. Farm Equip., Co.*, No. 4:23-CV-01050-JD, 2025 WL 2450913, at \*10 (D.S.C. Aug. 26, 2025). Under *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 151 (1999), district courts must assess the reliability of experience-based expert testimony by ensuring it is: (1) based on valid experience or technical knowledge, (2) tied to the facts of the case, (3) applied in a manner consistent with the expert's field, and (4) explained clearly enough for judicial scrutiny. *Mincey*, 2025 WL 2450913, at \*10. These factors differ slightly from those used to assess the reliability of scientific methodology initially proposed under *Daubert*, and the Fourth Circuit has recognized that "some of *Daubert*'s questions can help to evaluate the reliability even of experience-based testimony," but which factors apply depends on the context. *Kumho Tire*, 526 U.S. at 151.

### A. Items 1 & 7: Failure to Determine the Extent of the Damage & Subjective Evaluations of Contamination

Defendants argue Minor's testimony and opinions are not reliable because he failed to determine the extent of the damage, did not identify the source of contamination in his evaluation, and made subjective evaluations of the level of contamination observed on the inventory. ECF No. 60 at 5–7. Defendants point out that Minor defined dust as "debris of a small size," not including mold; he did not identify "whether the 'contamination' he observed in his inspections was caused by exposure to water or by 'dust' and debris from months or years of items sitting in a cardboard box, without a top, in the warehouse;" and he noted there "would be subjectivity [in classifying heavy, medium, and light contamination] because we all have different opinions." *Id.* Defendants also challenge Minor's failure to investigate the product within visibly water-damaged

packaging to determine whether the product itself was damaged or retained any functionality. *Id.* at 6.

Plaintiff emphasizes that Minor inspected the subject inventory on two separate visits: in May and June of 2022. ECF No. 71 at 7. In the second visit, which took place over the course of three days in June, Minor and his team visually inspected, photographed, and noted the contamination and number of parts in total inventory of approximately seventy skids containing over 500 different part numbers and parts exceeding fifteen million pieces of inventory. *Id.* (citing ECF No. 46-12). Minor assigned various levels of contamination to the distinct part numbers to determine that "many of the skids, the packages contained within, and the electronic components had signs of significant contamination by water and debris, with standing water, mold, and corrosion present on some items as well." *Id.* (citing ECF No. 46-12). Plaintiff highlights that Minor's report following the three-day inspection contains photos of each skid, supporting his conclusions that the components were exposed to water and associated debris. *Id.* at 9.

Minor has previously served as an expert and has worked on multiple high profile insurance claims to document damages and identify costs. ECF No. 60-2 at 1–2. His determination of the extent of the damage is supported by photo evidence that could be used to replicate his findings. He also created various categories of contamination to classify and evaluate the levels of damaged inventory. *See* ECF No. 71 at 12. Though Minor did not inspect every product within the skids, given that there are more than fifteen million individual parts that would require inspection, his process of pulling a representative sample and relying on printed amounts on the packaging when it did not appear to be opened is reasonable.

This type of visual assessment, inspection, and valuation falls squarely within Minor's field of practical expertise. Minor sufficiently explained his methodology and bases for his

determinations in categorizing and classifying the damaged inventory. Plaintiff has shown that Minor's methods used to determine the damage are based on his technical knowledge and experience. *See Kumho Tire*, 526 U.S. at 151.

The Court is satisfied that this methodology is reasonably reliable under Rule 702(c) and has been reliably applied to the facts under Rule 702(d). *See Mincey*, 2025 WL 2450913, at \*10; *see also Nease v. Ford Motor Co.*, 848 F.3d 219, 229–30 (4th Cir. 2017) (affirming that experience-based methods may be admissible where adequately explained and applied).

### B. Item 8: Failure to Determine Fair Market Value

Defendants argue that Minor was initially retained to determine the replacement value of the inventory, not the fair market value, and that his valuation of the goods erroneously includes only the replacement value. ECF No. 60 at 8–11. Plaintiff highlights that this issue has already been argued before and ruled on by this Court, ECF No. 71 at 13, though Defendants emphasize that whether expert testimony is reliable, and thus admissible, is a gatekeeping function that was not addressed at the time. ECF No. 78 at 2.

South Carolina courts have defined fair market value as: "(1) [t]he price that a seller is willing to accept and a buyer is willing to pay on the open market and in an arm's length transaction; [or] (2) the price which a willing buyer will pay a willing seller, neither being under compulsion to buy or sell." *Austin v. Stokes-Craven Holding Corp.*, 691 S.E.2d 135, 146 (S.C. 2010) (internal quotation marks omitted) (citing *Mazloom v. Mazloom*, 675 S.E.2d 746, 753 (S.C. Ct. App. 2009)). "Determination of fair market value is a question of fact." *Mazloom*, 675 S.E.2d at 753 (quoting *Payne v. Holiday Towers, Inc.*, 321 S.E.2d 179, 182 (S.C. Ct. App. 1984)).

Plaintiff has explained that its water damaged products have a resale value of zero. *See* ECF No. 46-1 (Schneck 30(b)(6) Dep.) 128:4–11, 152:5–20 ("You wouldn't sell that . . . If I went

8

to sell any of this, I would have to tell the customer that these parts have been through a water intrusion."). Minor's reliance on Plaintiff's statements that the products are a complete loss after being damaged by water is not a basis for the exclusion of his testimony. *See Moore v. BPS Direct, LLC*, No. 2:17-CV-3228-RMG, 2019 WL 2913306, at *6 (D.S.C. July 8, 2019) (finding expert could rely upon the work of other individuals in his field as well as the testimony of a lay witness); *see also Randall*, 2025 WL 2312469, at *2 (denying motion to exclude expert witness when defendant argued that expert relied on plaintiff's estimated values).

Further, using this resale value, Minor's description in his deposition of the method he used to obtain the values of the inventory describes an amount matching the description of fair market value. *See* Minor Dep. 148:7–149:18. Though Defendants may raise concerns over a jury being confused or misled, the Court disagrees. Ultimately, Defendants take issue with how Minor defines his data, but such a dispute does not go to the reliability of Minor's testimony, at least for Rule 702 purposes.

### C.  Item 9: Acceptance of Plaintiff's Allegations

Defendants argue Plaintiff's expert "is unreliable because he simply accepts Plaintiff's allegations." ECF No. 60 at 11. As an example, Defendants highlight that Minor accepted Plaintiff's assertion that all skids claimed as damaged did, in fact, sustain damage. *Id.* (citing Minor Dep. 49:14–50:3). They also point out that Minor accepted Plaintiff's proposed pricing for allegedly damaged inventory when online research failed to generate a replacement cost, and he relied on Plaintiff's list of skids that were exposed to moisture on April 7, 2022. *Id.* at 12–13.

Plaintiff counters that though Minor considered inventory quantities and amounts provided by Plaintiff, he also independently researched pricing from various industry sources, relied on his experience in evaluating electronic losses, and personally inspected the subject inventory on

multiple occasions. ECF No. 71 at 8 (citing *Randall*, 2025 WL 2312469, at *2 (denying motion to exclude expert witness who appraised personal property virtually using photographs provided by plaintiff, reviewed valuations by checking available online websites, and drew upon personal knowledge). Plaintiff also highlights that Minor's categorization of the subject levels of contamination suggests that his investigation was independent from Plaintiff's assertion that all skids were damaged, and that Minor updated the quantities from the spreadsheet Plaintiff provided after he completed the three-day inspection. *Id.* at 12.

Minor's reliance on Plaintiff's list of damaged skids months after the water intrusion, as well as checking Plaintiff's valuations on items for values—especially at the quantity Plaintiff held—that were not readily available, is reasonable and likely necessary given the circumstances. Though Defendants assert that "Minor's methodology was patently unreliable because he ignored market data in favor of appeasing . . . Plaintiff," ECF No. 78 at 2, Minor's deposition and report indicate that he used reasonable diligence to reach opinions regarding the value of Plaintiff's damaged inventory, checking numerous websites, confirming with outside sources, and drawing on personal experience to determine values. *See Randall*, 2025 WL 2312469, at *2; *Mincey*, 2025 WL 2450913, at *10.

Plaintiff has shown by a preponderance of the evidence that the methodology used to confirm the values for available quantities of the claimed inventory is consistent with Minor's expertise and has been explained clearly enough to withstand judicial scrutiny. *See Mincey*, 2025 WL 2450913, at *10. Defendants' argument that Minor simply rubberstamped Plaintiff's inventory values goes to the weight, not the admissibility, of Minor's testimony.

### D. Item 10: Assignment of Value to Items Lacking Evidence of Contamination

Defendants also assert that Minor's methodology and opinions are unreliable because he assigned value to items that his own investigation concluded did not show any evidence of damage or contamination. ECF No. 60 at 13. Plaintiff responds that Minor created various categories of contamination to provide a more thorough analysis, and that inventory subject to water and debris could not be sold by Plaintiff such that Defendants' focus on functionality misses the mark. ECF No. 71 at 11–12.

Defendants construe Plaintiff's response as a concession that inventory with no visible contamination is still marketable. ECF No. 78 at 3. It is unclear whether Plaintiff does, in fact, concede this point, *see* ECF No. 71 at 12 ("As it turns out, any level of visible contamination of the subject inventory renders the product a total loss and not marketable."), given Plaintiff's evidence indicating that any exposure to the moisture whatsoever makes the products unmarketable because a willing buyer would not be interested in buying materials that had the risk of contamination, *see* Schneck 30(b)(6) Dep. 152:5–20. In any event, this argument again goes to the weight, rather than the admissibility, of Minor's testimony. A jury can determine whether it is reasonable for Plaintiff to be compensated, should it find liability, for products containing no visible evidence of contamination. *See Sommerville v. Union Carbide Corp.*, 149 F.4th 408, 423 (4th Cir. 2025) (finding exclusion of expert to be abuse of discretion because "questions regarding the factual underpinnings of the [expert witness'] opinion affect the weight and credibility of the witness' assessment, not its admissibility" (quoting *Bresler v. Wilmington Tr. Co.*, 855 F.3d 178, 195 (4th Cir. 2017))).

As set forth in the preceding sections, Plaintiff has shown that Minor's methodology was reliable and relevant to the facts of this case.

### E. Items 2–6: Failure to Consider Prior Sales Data or Analyze Costs of Acquisition, Potential Resale Value, Salvage Value, & Whether Inventory Was Obsolete

Defendants list these "failures" with little, if any, explanation or reasoning provided to explain why they warrant exclusion of Minor's testimony. The Court is not persuaded that any of these independent bases for purported unreliability are cause for the exclusion of Minor as an expert; nor would their collective effect change this determination.

Ultimately, these independent "holes" Defendants are attempting to "poke" are all factors that appear to suggest a lack of credibility, as opposed to reliability, on the part of Plaintiff's expert. A matter affecting the weight and credibility of the testimony is a question to be resolved by the jury. *Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 261 (4th Cir. 1999) ("[T]he court need not determine that the expert testimony a litigant seeks to offer into evidence is irrefutable or certainly correct. As with all other admissible evidence, expert testimony is subject to being tested by '[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof.'" (internal citation omitted) (quoting *Daubert*, 509 U.S. at 596)); *see also Sommerville*, 149 F.4th at 426 ("[T]hough framed as a 'reliability' question, the district court again waded into credibility determinations. Excluding [the expert] on this basis was an abuse of discretion."); *Kiessling v. Kiawah Island Inn Co. LLC*, No. 2:17-CV-02146-DCN, 2019 WL 331176, at *5 (D.S.C. Jan. 25, 2019) ("[I]n some cases, whether an expert should have considered certain facts when forming h[is] opinion goes to the weight of the opinion, not its admissibility." (citing *Sparks v. Gilley Trucking Co., Inc.*, 992 F.2d 50, 54 (4th Cir. 1993) ("[T]he objection relates more to how [expert] formed his opinion than to the facts upon which it was based. . . . Whether he properly performed a test goes more to the weight to be attached to his opinion than to its admissibility."))). Defendants will have ample opportunity for cross examination during which

they can raise these issues and question why Minor did not undergo the considerations Defendants argue he should have.

For the foregoing reasons, the Court finds that Plaintiff has met its burden of showing by a preponderance of the evidence that Minor's methods and opinions were reliable and will help a jury's understanding or determination as to the extent of the damage and the value of the loss.[4]

<b><u>CONCLUSION</u></b>

For the reasons set forth above, Defendants' Joint Motion to Exclude (ECF No. 60) is **DENIED**.

November 18, 2025                                     Molly H. Cherry
Charleston, South Carolina                    United States Magistrate Judge

---

[4] To the extent the parties dispute whether Minor can or will testify as to whether Defendants' actions *caused* the alleged damage that Minor inspected, *see* ECF No. 78 at 2–3, Plaintiff has asserted that Minor will only testify as to the extent of the damage and the value of the loss. ECF No. 60-1 at 2. There is no evidence before the Court that Minor is a qualified expert as to causation, such that Minor will not be permitted to testify as to causation during trial.